**Alan MASSEY, Plaintiff,**

v.

**CITY OF OKLAHOMA CITY, a Municipal Corporation, Lloyd Gramling, Chief of Police; R.V. Wilder, Assistant Chief of Police, Unknown John Does, Defendants.**

**No. CIV–84–1628–A.**

United States District Court,
W.D. Oklahoma.

Feb. 1, 1986.

Michael Gassaway, Hughes, Nelson & Gassaway, Steven M. Angel, Oklahoma City, Okl., for plaintiff.

Richard C. Smith, Asst. Mun. Counselor, James R. Euson, Acting Counselor, Lawrence E. Naifeh, Asst. Mun. Counselor, Oklahoma City, Okl., for defendants.

## ORDER

ALLEY, District Judge.

On August 31, 1982, the plaintiff, Alan Massey, was discharged from the Oklahoma City Police Department. On January 23, 1983, the plaintiff filed a petition for a Writ of Mandamus in the District Court of Oklahoma County to order the defendant,

the City of Oklahoma City, to reinstate him as an Oklahoma City policeman. On March 30, 1984, the defendant City filed a demurrer to the plaintiff's petition and the District Court of Oklahoma County sustained the demurrer on the grounds that the plaintiff failed to state a cause of action in his petition. The State Court then gave the plaintiff fifteen days to amend his petition or the case would be dismissed. The plaintiff failed to amend his petition in fifteen days; therefore, the court dismissed the case with prejudice. The plaintiff did not appeal from this decision and the time has lapsed to do so.

On July 2, 1984, the plaintiff filed an action in this Court based on the same facts alleged in the case filed in the District Court of Oklahoma County. In this action, however, the plaintiff has not asked for the issuance of a Writ of Mandamus, but instead has alleged that the defendant City has violated his Constitutional rights and certain federal statutes. The plaintiff is now seeking monetary damages as provided for under 42 U.S.C. §§ 1983, 1985 (1982) and 18 U.S.C. § 1964 (1982).

On May 22, 1985, the defendant City moved for a summary judgment on the grounds that the dismissal of the case in the District Court of Oklahoma County was res judicata and a bar to the present action. For the reasons given below, this motion is granted as to the claim arising under 42 U.S.C. §§ 1983 and 1985 (1982), and that cause of action is hereby dismissed as to all defendants. As to the claim arising under 18 U.S.C. § 1964 (1982), the claim against the City of Oklahoma City is dismissed, but the plaintiff may proceed in this cause of action against the two individual defendants, Lloyd Gramling and R.V. Wilder.

The case of *Spence v. Latting*, 512 F.2d 93 (10th Cir.), cert. denied, 423 U.S. 896, 96 S.Ct. 198, 46 L.Ed.2d 129 (1975), presented a situation similar to the case at bar. A policeman for the Oklahoma City Police Department was dismissed from his job. He brought four lawsuits against the City of Oklahoma City in which he sought either a Writ of Mandamus or some form of de-

claratory relief. One suit was abandoned, one was dismissed, but the other two went on to trial in the District Court of Oklahoma County. The trial court ruled against the plaintiff in both of his suits and the Supreme Court of Oklahoma affirmed these decisions on appeal. The plaintiff then filed an action in Federal District Court alleging violations of his Constitutional rights and claiming damages under 42 U.S.C. § 1983. The Federal District Court granted a summary judgment against the plaintiff and dismissed the action on the grounds that it was barred by res judicata. The Court of Appeals for our circuit affirmed this decision, holding: "Where a second suit between the same parties or their privies is on the same cause of action, the final judgment in the prior action is conclusive as to all matters which were actually litigated as well as those which could have been litigated." *Spence*, 98.

In the case at bar, when the plaintiff pursued his mandamus action at the State Court level, he could have presented his claims for damages there. 12 Okla. Stat. §§ 1460, 1461 (1981). In *Braine v. City of Stroud*, 385 P.2d 428 (Okla.1963), the Oklahoma Supreme Court held that a judgment for the plaintiff in a mandamus proceeding would foreclose his later, separate action for damages, because 12 Okla. Stat. §§ 1460 and 1461 (1961) not only permitted but required the plaintiff in a mandamus proceeding to submit the damages he has sustained to be ascertained at that time by the Court, a jury, or referees. This is the strongest expression of a public policy to wrap up litigation in a single round that one could encounter.

In the case at bar, the State Court ruled that the plaintiff failed to state a cause of action in his original petition and allowed him fifteen days to amend it. Had the plaintiff taken advantage of this opportunity he may have been able to win his case in the State Court and he could have made his Constitutional claims and asked for money damages there. But the plaintiff chose not to avail himself of this opportunity and

allowed the fifteen days the court gave him to amend his petition to lapse. The Court then entered an order dismissing the plaintiff's claim and he was allowed thirty days to appeal this decision to the Supreme Court of Oklahoma. Again the plaintiff failed to take advantage of the opportunity before him. Had the plaintiff appealed his decision and won, he would have been allowed to present his claims for damages to the State District Court on remand. When a plaintiff chooses not to avail himself of the opportunities the State Court affords him to litigate and appeal his case, he cannot wipe the slate clean, step into the Federal Court system and expect to get a second chance to do what he should have done or what he might have done in the State Court system. As was stated in *Spence*, supra at p. 98, the long established doctrine of res judicata is based on the policy of preventing endless or repetitive litigation by effectively coercing the plaintiff to present all his grounds for recovery in the first proceeding.

■ The plaintiff is therefore barred from seeking damages against the defendant in this case under 42 U.S.C. §§ 1983 and 1985 (1982), because the claims for relief under these statutes could have been litigated at the State Court level. It has been widely held that state courts have concurrent jurisdiction with the federal courts to hear and decide civil rights cases brought pursuant to 42 U.S.C. § 1983 (1982). *Long v. District of Columbia*, 469 F.2d 927 (D.C.Cir.1972); *Young v. Board of Educ. of Fremont County School Dist.*, 416 F.Supp. 1139 (D.Col.1976); *Bennun v. Board of Governors of Rutgers*, 413 F.Supp. 1274 (D.N.J.1976).

The question of whether the state courts have concurrent jurisdiction with the federal courts to hear and decide claims brought under the federal RICO statutes, 18 U.S.C. § 1964 (1982), has not been widely litigated, however, and it is a question of first impression in this Court. The first case to address this issue was *Luebke v. Marine Nat'l Bank of Neenah*, 567 F.Supp. 1460 (E.D.Wis.1983), where the Court stated in a dictum that, although the law was unclear, the state courts probably had concurrent jurisdiction with the federal courts to hear civil RICO claims because there was no express statutory directive to the contrary. Following closely on the heels of this decision, however, was the case of *County of Cook v. Midcon Corp.*, 574 F.Supp. 902 (N.D.Ill.1983). There the court examined more closely the legislative history of the RICO act and found that the Congress consciously patterned the RICO jurisdictional provision, 18 U.S.C. § 1964(c), directly after Section 4 of the Clayton Antitrust Act, 15 U.S.C. § 15, which has long been held to give the federal courts exclusive jurisdiction over antitrust claims. *County of Cook*, p. 912. The Court reasoned that the legislators must have known that the language from the Clayton Act has consistently been construed as granting exclusive jurisdiction to the federal courts; therefore, Congress must have intended that the RICO claims, like antitrust claims, should be within the exclusive jurisdiction of the federal courts. The cases of *Kinsey v. Nestor Exploration Ltd.*, 604 F.Supp. 1365 (E.D.Wash.1985) and *Greenview Trading Co. v. Hershman & Leicher, P.C.*, 108 A.D.2d 468, 489 N.Y.S.2d 502 (1985), are in accord that only federal courts have power to hear RICO claims.

■ In light of the legislative history of the RICO Act and the well reasoned opinions addressing this issue, it is the holding of this Court that civil claims brought under the RICO statutes, 18 U.S.C. § 1964, are within the exclusive jurisdiction of the federal courts. The plaintiff's claim for damages under 18 U.S.C. § 1964 is, therefore, not barred by res judicata because he was not able to present it at the State Court level.

■ The next question that must be answered in regard to the plaintiff's RICO claim is: who can be held liable under the RICO statutes? In order for a plaintiff to qualify for the civil remedies of 18 U.S.C. § 1964 (1982), he must first prove that the defendant has previously committed one of the "predicate offenses" set out in 18

U.S.C. § 1962 (1982). The three principal defendants in this case are the City of Oklahoma City, a municipal corporation; Lloyd A. Gramling, Chief of Police of Oklahoma City; and R.V. Wilder, Assistant Chief of Police of Oklahoma City. These three defendants all meet the broad definition of a "person" under 18 U.S.C. § 1961(3), which states that the word includes any individual or entity capable of holding a legal or beneficial interest in property. This definition is important because only "persons" can violate § 1962; therefore, only "persons" can be held liable for civil damages under § 1964. Of the three defendants, however, only Gramling and Wilder have the capacity to commit one of the predicate offenses listed in § 1962. The City of Oklahoma City is not an individual or natural person as are the other two, but it is instead a "municipal corporation." The term "municipal corporation" was explicated by the Supreme Court in *St. Joseph Township v. Rogers,* 83 U.S. (16 Wall.) 644, 21 L.Ed. 328 (1873), in which it was stated that municipal corporations are created by the legislature; they derive all their powers from the source of their creation; and these powers are at all times subject to the control of the legislature.

■ In the case at bar, it is clear that the City of Oklahoma City could not be found to have violated one of the predicate offenses in § 1962, because, since it is a corporation or an "artificial person" that can act only through its officers, the City itself is incapable of forming the mens rea or criminal intent necessary to perform an act of racketeering as defined by § 1961(1) of the RICO statute. The officials of the City, the mayor, the City councilmen, etc., have the capacity to perpetrate this type of activity, but the City, the body politic, could not. Further, since the City is a municipal corporation, its powers to act are controlled by the Legislature of the State of Oklahoma. This Court is aware of no act of the Oklahoma Legislature that granted municipal corporations within this State the power to engage in any kind of activity that could be deemed racketeering. Without power conferred by the legislature, it does not have the capacity to engage in this type of activity and cannot be found to have violated the predicate offenses of § 1962. If its officials did so, their actions were necessarily *ultra vires.*

■ The Court also concludes that a municipal corporation is immune from actions for treble damages under 18 U.S.C. § 1964(c) as a matter of public policy. In the case of *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981), the Supreme Court held that in cases arising under 42 U.S.C. § 1983, punitive damages cannot be assessed against municipalities. The Court stated that when Congress passed the Civil Rights Act of 1871, it was firmly established that, although municipalities could be held liable for a wide range of tortious activity, they were subject only to compensatory damages. The Court cited cases decided about the time of the passage of the Civil Rights Act in which this doctrine was applied in different circumstances. In one of these, *Hunt v. City of Boonville,* 65 Mo. 620 (1877), the Missouri Supreme Court held that a municipality could not be found liable for treble damages under a trespass statute, even though the statute authorized such damages against "any person," because municipal corporations "cannot, as such, do a criminal act or a willful and malicious wrong and they cannot therefore be made liable for exemplary damages." The Court in the *Hunt* case went on to state that "[T]he relation which the officers of the municipal corporation sustain toward the citizens thereof for whom they act, is not in all respects identical with that existing between stockholders of a private corporation and their agents; and there is not the same reason for holding municipal corporations, engaged in the performance of acts for the public benefit, liable for the willful or malicious acts of its officers, as there is in the case of private corporations."

After the Supreme Court analyzed the *Hunt* case and several others that established the doctrine that municipal corpora-

tions could not be held liable for punitive damages, the Court proceeded on the assumption that "Congress would have specifically so provided had it wished to abolish the doctrine." The Court then reviewed the statute itself and its legislative history and found no evidence that Congress intended to disturb the settled common law immunity when the Civil Rights Act was passed in 1871. The Court next determined whether considerations of public policy would dictate a contrary result. Punitive damages are not intended to compensate an injured party, but are instead used to punish the tortfeasor and to deter him and others from following the same course of action again. Punitive damages awarded against a municipality only "punish" the taxpayers who took no part in the commission of the tort. Therefore, the Court held that it would be unreasonable and unjust to make blameless and unknowing taxpayers shoulder the burden of paying punitive damages awards. The Court went on to state: "Under ordinary principles of retribution, it is the wrongdoer himself who is made to suffer for his unlawful conduct. If a government official acts knowingly and maliciously to deprive others of their civil rights, he may become the appropriate object of the community's vindictive sentiments. A municipality, however, can have no malice independent of the malice of its officials. Damages awarded for punitive purposes, therefore, are not sensibly assessed against the governmental entity itself." *City of Newport*, 453 U.S. at 267, 101 S.Ct. at 2760. In regard to the deterrence objective of punitive damages, the Court held that it is far from clear that municipal officials would be deterred from wrongdoing by the knowledge that large punitive awards could be assessed against the municipality they work for. For these reasons, the Supreme Court decided that municipal corporations are immune from punitive damages under 42 U.S.C. § 1983.

It is the opinion of this Court that the same public policy considerations that disallow assessing punitive damages against municipalities under 42 U.S.C. § 1983 apply in cases arising under 18 U.S.C. § 1964.

Nothing in the RICO statutes themselves (18 U.S.C. §§ 1961–1968), or in its legislative history (see H.R.Rep. No. 1549, 91st Cong., 2d Sess., reprinted in 1970 U.S.Code Cong. & Ad.News 4007), reveals any intention by Congress to abolish the common law doctrine of municipal immunity to punitive damages. Although the RICO statutes do not speak of "punitive damages," 18 U.S.C. § 1964(c) allows for a plaintiff to receive treble damages and treble damages have long been held to be a type of punitive damage award. See for example the *Hunt* case, supra, which was cited by the United States Supreme Court in it's discussion of punitive damages in the *City of Newport* case. In *Summers v. FDIC*, 592 F.Supp. 1240 (W.D.Okla.1984), this Court held that the treble damages section of the RICO statutes (18 U.S.C. § 1964(c)) is penal. This case is also of interest because it touches on the public policy issue involving punitive damages and governmental entities. In the *Summers* case, the FDIC had become the receiver for the defunct Penn Square Bank. Plaintiff sued the FDIC under the RICO statutes for an injury sustained prior to the FDIC take-over of the bank and caused by the activities of the bank's previous management, praying for treble damages under 18 U.S.C. § 1964(c). The FDIC moved to strike this part of the plaintiff's complaint. This Court granted the motion, holding that, "It would be plainly unjust to permit such an award against the receiver, for innocent depositors and creditors alone would be punished, not the putative wrongdoer, the bank." *Summers*, 592 F.Supp. at 1243.

Just as it would be unjust to hold the FDIC liable for treble damages, the payment of which would ultimately fall on the shoulders of innocent depositors and creditors, it would be equally unjust to hold a municipal corporation liable for such damages because payment of the award would be made by the innocent taxpayers of the municipality. If the officers and policymakers of a municipality are engaging in the type of activity that would render them liable to treble damages under the RICO

statutes, they may be sued individually and treble damages may be recovered against them. But such a suit does not lie against a municipal corporation because justice and public policy dictate that taxpayers, who are not privy to the private dealings of a corrupt city official, should not be penalized for wrongdoing of which they knew nothing and could not prevent.

In conclusion, the plaintiff's constitutional claims and his claim for money damages under 42 U.S.C. §§ 1983 and 1985, are dismissed because they are barred by res judicata. The state courts have concurrent jurisdiction with the federal courts in these matters; therefore, these claims are among those that the plaintiff might have brought in his prior State Court action. The plaintiff's claim under 18 U.S.C. § 1964 will not be barred by res judicata, because the federal courts have exclusive jurisdiction over actions brought under the federal RICO statutes and therefore the plaintiff could not have brought this claim at the state court level. The plaintiff's RICO claim against the City of Oklahoma City will be dismissed because the City does not have the capacity to commit the predicate offenses outlined in § 1962 of the RICO statutes that will trigger civil liability under § 1964. The City of Oklahoma City, being a municipal corporation, is also immune from the treble damage provision of the RICO statutes. The plaintiff's RICO claim against the two individual defendants, Lloyd Gramling and R.V. Wilder, will stand.