**Robert A. BIONDOLILLO, Plaintiff,**

v.

**The CITY OF SUNRISE, et al., Defendants.**

**No. 89–6115–CIV.**

United States District Court, S.D. Florida.

May 4, 1990.

Prof. Steven Wisotsky and J. Phillip Landsman, Fort Lauderdale, Fla., for plaintiff Robert A. Biondolillo.

E. Bruce Johnson and Patricia A. Burton, Fort Lauderdale, Fla., for defendant City of Sunrise.

Harriet Lewis, Hollywood, Fla., for defendant Lawrence Hoffman.

## ORDER

GONZALEZ, District Judge.

This cause has come before the Court pursuant to the defendant City of Sunrise's ("the City") *renewed* motion to dismiss the plaintiff's first amended complaint, Fed.R. Civ.P. 12(b)(6).

This Court, on March 7, 1990, granted the City's motion to dismiss the plaintiff's original first amended complaint, and granted the plaintiff leave to file a *second* amended complaint. The Court ordered the plaintiff to file this *second* amended complaint outlining facts which may hold the City liable. Instead, the plaintiff, on March 27, 1990, filed "Plaintiff's Amendments To The First Amended Complaint", a collection of paragraphs which are to be inserted into the first amended complaint.

The City argues that the plaintiff's claims should be dismissed because (1) plaintiff has again failed to allege facts which would establish a policy that could subject the City to municipal liability under 42 U.S.C. § 1983; (2) since the plaintiff did not directly comply with the Court's Order by filing an amendment to the *first* amended complaint and not a second amended complaint, the amendment should be stricken and the case against the City dismissed; and (3) the City cannot be held liable under the Racketeering Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.*, as a matter of law.[1]

█ A local government may be sued for injuries inflicted by its employees or agents. For a municipality to be held liable, however, a movant has the burden of proving that the injuries were the result of the execution of outstanding state policy. *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 694–695, 98 S.Ct. 2018, 2037–2038, 56 L.Ed.2d 611 (1978).

The plaintiff, in its "Amendments To The First Amended Complaint" ("amendments"), has filed twelve subsections to paragraph 8 of the amended complaint. These subsections, allege that the defendant Lawrence Hoffman ("the Mayor") is the only full time elected official who serves the City, and because the City has a "strong mayor form of government", the Mayor basically ran the City.

The amendments state that the Mayor exercised final policy making decisions over the filing of criminal charges, created the

---

1. Plaintiff, on January 2, 1990, filed a twelve count amended complaint against the defendants. The plaintiff claims, *inter alia,* that he suffered injuries because he was a "whistleblower" against the City and defendant Lawrence Hoffman.

 Counts One and Two claims that plaintiff is due relief under 42 U.S.C. § 1983 due to violations of his First and Fourteenth Amendment rights. Counts Three to Seven involve RICO violations. Counts Eight to Ten involve a claim pursuant to the Florida Civil Remedies for Criminal Practices Act. Count Eleven involves a claim for defamation. Count Twelve involves a claim for Intentional Infliction of Emotional Distress.

 The plaintiff claims that while trying to disseminate information pertaining to his investigation of the defendants, plaintiff was persecuted for being a "whistleblower". Plaintiff claims physical injuries, loss of reputation, and loss of an assured promotion to captain all ensued due to the restraint of his speech, thus violating the plaintiff's First and Fourteenth Amendment rights. (Counts One and Two). The plaintiff also alleges that the City, Hoffman and others conspired to bring about these injuries. (Counts Three to Seven).

initial security unit that carried out the "smear" against the plaintiff, and dictated police matters. The plaintiff alleges that it was the Mayor's sole and exclusive decision to transfer the plaintiff.

The plaintiff, therefore, has alleged that a policy exists that could hold the City liable, and that such a policy was established by such high ranking members of the City's government as would lead to the City's liability. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 108 S.Ct. 915, 927, 99 L.Ed.2d 107 (1988). The allegations are sufficient enough to deny this Rule 12(b) motion, even though the plaintiff, in its amendments, has admitted that there are no written rules or regulations authorizing or governing the conduct of the City's investigators. The plaintiff has met the minimal burden to overcome a Rule 12(b) motion, and the case against the City should not be dismissed at this time.

The United States Supreme Court has held that a municipality may be held liable under § 1983, for "acts which the municipality has officially sanctioned or ordered." *Pembaur v. Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 1298, 89 L.Ed.2d 452 (1986). Only those officials with "final policymaking authority" may subject the municipality to § 1983 liability. *Id.* at 483, 106 S.Ct. at 1300. Whether an official has "final policymaking authority" is a question of state law, *Id.* at 483, 106 S.Ct. at 1300, and the challenged action must have been taken pursuant to policy adopted by the official responsible under state law for making policy in that area of the city's business. *Id.* at 482–283, 106 S.Ct. at 1299–1300.

Thus, the City would be liable under § 1983 if the plaintiff proved the existence of an unconstitutional municipal policy. *Praprotnik*, 108 S.Ct. at 926. The plaintiff here merely alleged that the Mayor established the policies which led to the plaintiff's injuries.

The plaintiff has offered facts such as internal memoranda and the Mayor's deposition which allege that the Mayor had the final decision regarding certain policies which the plaintiff allege injured the plaintiff. Thus, the City's motion to dismiss on the basis of municipal liability must be denied.

The City, in its reply memorandum, states that the Mayor was not authorized to make policy concerning the facilitation and concealment of corruption, and that corruption is not an authorized area of the City's business. As stated, however, the plaintiff had offered facts which state that the Mayor had the final decision making policy.

■ The City's motion to dismiss the R.I.C.O. claims against it, however, must be granted.

To state a *civil* claim under R.I.C.O., a claimant must allege:

(1) that a person (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate commerce. *Sedima, S.P. R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985)[2]. A "pattern" under R.I.C.O. "requires at least two acts of racketeering activity" within a ten year period, 18 U.S.C. § 1961(5), or multiple predicates within a single scheme that amounted to criminal activity. *H.J. Inc. v. Northwestern Bell Telephone Co.*, — U.S. ——, 109 S.Ct. 2893, 2899, 106 L.Ed.2d 195 (1989).

A R.I.C.O. claimant must show that the predicates are related and pose a threat to continued criminal activity. *H.J. Inc.*, 109 S.Ct. at 2990. In contrast, a civil R.I.C.O. claimant must prove conduct that is indictable, and offenses that are punishable under various criminal statutes. *Sedima*, 473 U.S. at 488, 105 S.Ct. at 3280.

Several courts have ruled that a municipality is incapable of the criminal intent required under R.I.C.O. *See, e.g., Victor v. White*, No. C–88–3550–DLJ, slip op., 1989 WL 108276 (N.D.Cal. July 26 1989); *Alba-*

---

**2.** See also, *O'Malley v. O'Neill*, 887 F.2d 1557, 1561 (11th Cir.1989); *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir.1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984); *U.S.A. Network v. Jones Intercable, Inc.*, 729 F.Supp. 304, 316 (S.D.N.Y.1990).

*nese v. City Federal Savings and Loan Assn.*, 710 F.Supp. 563 (D.N.J.1989); *In re Citisource, Inc.*, 694 F.Supp. 1069 (S.D.N. Y.1988); *Massey v. City of Oklahoma*, 643 F.Supp. 81 (W.D.Okl.1986); *Chambers Development Co., Inc. v. Municipality of Monroeville*, 617 F.Supp. 820 (W.D.Pa. 1985). These cases have held that although a municipality can be a person under R.I.C.O.[3], it could not be liable for the predicate acts necessary to establish under R.I.C.O. A municipality is incapable of the criminal intent necessary to support the alleged predicate offenses. *Victor v. White, supra; Albanese*, 710 F.Supp. at 565; *Citisource*, 694 F.Supp. at 1079–1080; *Massey*, 643 F.Supp. at 84–85.

█ In conclusion, it is well-settled that municipalities cannot be liable for punitive damages. *City of Newport v. Fact Concerns, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). Although not raised by the plaintiff, the City may not be held vicariously liable under respondeat superior principles. Agency liability has been rejected as a basis for R.I.C.O. liability. *Citisource*, 694 F.Supp. at 1080; *Schofield v. First Community Corp. of Boston*, 793 F.2d 28, 32–34 (1st Cir.1986); *Petro–Tech v. Western Company of North America*, 824 F.2d 1349, 1359 (3d Cir.1987).

The Court has reviewed the record, and the being otherwise duly advised, it is hereby:

ORDERED and ADJUDGED as follows:

(1) That the City's motion to dismiss the plaintiff's claims under 42 U.S.C. § 1983 against the City be DENIED;

(2) That the City's motion to dismiss the plaintiff's R.I.C.O. claims against the City be GRANTED; and

(3) That the City shall file its answer to the plaintiff's first amended complaint, as amended, in twenty (20) calendar days from the date of this Court's Order.

---

**3.** *Citisource*, 694 F.Supp. at 1079; *See also, Haroco, Inc. v. American Nat'l Bank and Trust Co. of Chicago*, 747 F.2d 384, 386 (7th Cir.1984), *aff'd*, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985).