PINE RIDGE RECYCLING, INC., et al., Plaintiffs,

v.

BUTTS COUNTY, GEORGIA, et al., Defendants.

C.A. No. 93–426–2–MAC (WDO).

United States District Court, M.D. Georgia, Macon Division.

June 22, 1994.

Stephen E. O'Day, Clark G. Sullivan, and George E. Butler, II, Atlanta, GA, for plaintiffs.

Joseph R. Cullens, Jack N. Sibley, H. Lane Young, II, and Nickolas P. Chilivis, Atlanta, GA, for defendants.

## ORDER

OWENS, Chief Judge.

This action seeks to prevent Butts County, Georgia, its Board of Commissioners ("Board"), the Butts County Solid Waste Management Authority ("Authority"), and their individual members from opposing or otherwise interfering with the establishment of Pine Ridge's municipal solid waste landfill ("MSWLF"). Plaintiffs Pine Ridge Recycling, Inc. ("Pine Ridge") and Stephen Dale seek damages and injunctive relief against the defendants based upon violations of the Sherman Antitrust Act ("Sherman Act"), 15 U.S.C. §§ 1, *et seq.,* the Clayton Antitrust Act ("Clayton Act"), 15 U.S.C. §§ 12 *et seq.,* the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et*

*seq.,* the Commerce Clause of the United States Constitution, U.S. Const. Art. 1, § 8, cl. 3, and 42 U.S.C. § 1983. Defendants have filed a motion to dismiss the complaint for failure to state a claim. After careful consideration of the arguments of counsel, the relevant case law, and the record as a whole, the court issues the following order.

## I. FACTS

Pine Ridge was incorporated for the purpose of developing and operating MSWLFs within Georgia. Pine Ridge has purchased options on a 201 acre site in Butts County, Georgia, and plans to construct a "Subtitle D" MSWLF thereon. Defendant Butts County Solid Waste Management Authority currently operates a MSWLF in Butts County which disposes of waste generated in Butts and surrounding counties.

Effective in the early 1990s, federal regulations, known as "Subtitle D," tightened the requirements on MSWLFs. Instead of complying with "Subtitle D" requirements, many of the MSWLFs surrounding Butts County chose to gradually cease operations. The Butts County Authority's current MSWLF does not comply with "Subtitle D", but the county intends to build a MSWLF which satisfies the regulations.

In 1993, the Butts County Authority applied for and received a vertical expansion permit to continue receiving waste at the existing landfill until July 1, 1998. The vertical expansion permit allows the Authority to dispose of as much solid waste as it can intake until July 1998; the permit does not limit the tonnage disposed of at the site. Plaintiffs allege that, by virtue of the vertical expansion permit and the lack of other nearby MSWLFs, the Butts County Authority has a monopoly on the solid waste market within the Butts County Region, the area within thirty miles of the Butts MSWLF. Plaintiffs fear this monopoly could become intractable because state law requires cities and counties to develop solid waste disposal plans assuring adequate disposal capacity over the following ten-year period. *See* O.C.G.A. § 12–8–31.1.

The complaint alleges that defendants view the landfill enhanced with the vertical expansion permit as a profit-making enterprise which will allow the county to partially subsidize building a new MSWLF which complies with "Subtitle D" requirements. To take advantage of the profit potential of the existing landfill, defendants have entered into multi-year contracts with neighboring municipalities and counties and private waste generators.

Plaintiffs allege defendants have also used funds generated from the vertical expansion permit to actively oppose the permitting of Pine Ridge at its current site. Pine Ridge expects to be a competitor of Butts County's MSWLF. To avoid the competition, defendants allegedly engaged in a conspiracy to monopolize the area's solid waste market and have committed illegal acts to obstruct Pine Ridge from constructing its proposed MSWLF.

Before beginning construction, Pine Ridge must receive a permit from the Georgia Environmental Protection Division ("EPD").[1] According to plaintiffs, defendants have falsely informed waste generators that Pine Ridge's permit application will fail and thus that they have no alternative but to contract with the Butts County landfill. In addition, defendants have threatened to charge higher tipping fees to those generators who do not cooperate in opposing Pine Ridge's permit application.

The complaint further alleges that defendants have unlawfully manipulated the permitting process in violation of RICO and in an effort to sustain their attempted monopoly of the solid waste market. Defendant's op-

---

1. Georgia EPD can issue Pine Ridge a permit provided the following:
 (1) The site must be properly zoned;
 (2) Because the site is within ½ mile of Spalding County, Pine Ridge must have Spalding County's permission to locate the MSWLF on the site;
 (3) The MSWLF must be consistent with Butts County's solid waste management plan;
 (4) The EPD must determine that the site is environmentally suitable;
 (5) Landfilling activities at the site must not be within 10,000 feet of an airstrip which serves turbo-driven aircraft.

position allegedly includes the following actions.

1. A conspiracy between defendants and a local landowner to file suit challenging Pine Ridge's Special Exception zoning permit. Walter Crosland, a Butts County resident, brought suit in the Butts County Superior Court to invalidate the zoning exception and Butts County answered the *Crosland* lawsuit by admitting the allegations and proposing to invalidate the zoning permit. Complaint, ¶¶ 51–56.

2. Defendant Haley, Chairman of the Butts County Board of Commissioners, allegedly furthered the conspiracy to monopolize through a letter dated August 25, 1992, to the EPD informing them falsely that Pine Ridge's site did not conform to local zoning and land use laws. Complaint, ¶¶ 59–60.

3. Also in furtherance of the conspiracy, defendants pressured the Spalding County Board of Commissioners ("Spalding Board") to repudiate the Location Permit which allowed a MSWLF to be located near the Spalding County line. Board Member Haley warned the Spalding Board that Pine Ridge probably would not receive a permit and that defendants would remember the Spalding Board's actions when determining tipping fees. Complaint, ¶¶ 63–64.

4. Defendants manipulated the regional solid waste management plan (the "Butts Plan"), prepared in accordance with O.C.G.A. § 12–8–31.1, to classify the Pine Ridge site as unsuitable for a MSWLF. Complaint, ¶¶ 71–76.

5. Defendants, in another attempt to defeat the permit, sought to render the Pine Ridge site unsuitable under EPD regulations by granting a special exception to a local landowner to extend his privately-owned airstrip to within 6,500 feet of the site. Complaint, ¶¶ 94–100.

6. The latest obstacle to Pine Ridge's permit application is a recently enacted Butts County ordinance requiring county approval before a gravesite can be moved. Plaintiffs charge that defendants are using this ordinance to prevent development of the site *ex post facto.* Complaint, ¶ 101.

## II. ANALYSIS

A motion to dismiss under Rule 12(b)(6) attacks the legal sufficiency of the complaint. A complaint should not be dismissed for failure to state a claim unless the plaintiff can prove no set of facts entitling him to relief. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984) (*citing Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)); *Pataula Electric Membership Corp. v. Whitworth,* 951 F.2d 1238, 1240 (11th Cir.1992). The court is to presume true all of the complaint's allegations and make all reasonable inferences in the light most favorable to the plaintiff. *Miree v. DeKalb County, Ga.,* 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, 2492 n. 2, 53 L.Ed.2d 557 (1977); *Linder v. Portocarrero,* 963 F.2d 332, 334 (11th Cir.1992); *Duke v. Cleland,* 5 F.3d 1399, 1402 (11th Cir.1993). The rules require nothing more than "a short and plain statement of the claim" that will give the defendant fair notice of the claims and the grounds upon which they are based. *Conley,* 355 U.S. at 47, 78 S.Ct. at 103.

The complaint seeks damages, a reasonable attorney's fee, injunctive relief, and declaratory relief against defendants based upon the Sherman Act, the Clayton Act, RICO, the Commerce Clause, and § 1983.

### A. LEGISLATIVE IMMUNITY

Butts County, Georgia, its Board of Commissioners, the Butts County Solid Waste Management Authority, and their individual members are named as defendants in their official and individual capacities. As an initial matter, the court must decide if absolute legislative immunity insulates any or all of these individuals from suit. *Brown v. Crawford County, Ga.,* 960 F.2d 1002, 1011 (11th Cir.1992) (to preserve its purpose, entitlement to absolute immunity must be determined early on, such as on a motion to dismiss). *See also Marx v. Gumbinner,* 855 F.2d 783, 788 (11th Cir.1988).

"The absolute immunity of legislators, in their legislative functions, . . . now is well settled." *Harlow v. Fitzgerald,* 457 U.S. 800, 807, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396

(1982) (citations omitted). The United States Supreme Court has extended absolute immunity to state legislators, *Tenney v. Brandhove,* 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951), and to regional legislators, *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979), but has not reached the issue of immunity for local legislators. *See Spallone v. United States,* 493 U.S. 265, 278, 110 S.Ct. 625, 633–34, 107 L.Ed.2d 644 (1990). The Court cautioned, in *Spallone,* that "some of the same considerations on which the immunity doctrine is based must" be considered in cases involving local legislators. *Spallone,* 493 U.S. at 278, 110 S.Ct. at 634. Acknowledging this precedent, the Eleventh Circuit has extended absolute legislative immunity to local legislators in the performance of traditional legislative functions. *Crawford County,* 960 F.2d at 1011. *See also Hernandez v. City of Lafayette,* 643 F.2d 1188 (5th Cir. Unit A 1981), *cert. denied,* 455 U.S. 907, 102 S.Ct. 1251, 71 L.Ed.2d 444 (1982). The court in *Crawford County* endorsed absolute legislative immunity for individual county commissioners, regardless of whether the plaintiff could establish a conspiracy or bad faith motive on behalf of the commissioners. *Crawford County,* 960 F.2d at 1012.

■ Pine Ridge has sued both Butts County Commissioners and members of the Butts County Solid Waste Authority in their individual and official capacities. The court's reasoning in *Crawford County* makes it plain that the Butts County Commissioners are absolutely immune from suit while acting in their legislative capacity. The legislator's position is not dispositive, however. Rather, the nature of the act determines whether immunity attaches. *Yeldell v. Cooper Green Hospital, Inc.,* 956 F.2d 1056, 1062 (11th Cir.1992). Clearly, voting and speaking on the floor of the assembly are immunized from suit as they are essential to the legislative process. *Id.* at 1062 (citations omitted). On the other hand, public distribution of press releases, *Hutchinson v. Proxmire,* 443 U.S. 111, 99 S.Ct. 2675, 61 L.Ed.2d 411 (1979),

administrative acts, and denial of licenses generally are not protected from suit. *Yeldell,* 956 F.2d at 1062 (citations omitted).

■ Among other things, plaintiffs charge that Commissioner Wes Haley used the mails to send a letter to Georgia EPD containing a false statement with the intention of defrauding EPD and obstructing Pine Ridge's permit process. Complaint ¶¶ 59–60. Although Haley wrote the letter in his capacity as Chairman of the Butts County Board of Commissioners, the letter was not an essential part of the legislative process but is more administrative in nature. Therefore, the action is not entitled to absolute legislative immunity.

An examination of the other complained-of actions brings about a similar conclusion. The actions are not essential to the legislative process; thus, legislative immunity can not attach to this conduct.

### B. ANTITRUST CLAIMS

In Counts One, Three, and Four, plaintiffs allege defendants engaged in an unlawful combination and conspiracy in unreasonable restraint of interstate trade and commerce, violating § 1 of the Sherman Act. 15 U.S.C. § 1. Count Two charges a conspiracy and attempted monopolization of the solid waste disposal market in the Butts County Region in violation of § 2 of the Sherman Act. 15 U.S.C. § 2. Plaintiffs initially sought treble damages under the antitrust laws but subsequently amended the complaint on February 23, 1994, eliminating that demand in light of the Local Government Antitrust Immunity Act ("LGAIA"), 15 U.S.C. § 35(a). Plaintiffs continue to demand injunctive relief, attorney's fees, and expenses.[2]

■ Defendants contend that their actions, even if they are monopolistic, are sanctioned by state statutes and policy and, therefore, they are entitled to state action immunity. State action immunity was developed in the seminal case of *Parker v. Brown,* 317 U.S. 341, 352, 63 S.Ct. 307, 314, 87 L.Ed. 315 (1943). In *Parker,* the Supreme Court, relying on principles of federalism and state

---

**2.** The complaint initially charged a violation of the state antitrust prohibition. However, the court dismissed this claim without prejudice in January 1994.

sovereignty, held that the Sherman Act does not apply to the anticompetitive conduct of states acting as sovereigns, rather the Act applies to persons and corporations. "Nothing in the language of the Sherman Act or in its history ... suggests that its purpose was to restrain a state or its officers or agents from activities directed by its legislature." *Id.*, 317 U.S. at 350–51, 63 S.Ct. at 313. Cities are not automatically immune from the federal antitrust laws, but are entitled to immunity if the cities' anticompetitive conduct is sanctioned by a "clearly expressed state policy." *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 40, 105 S.Ct. 1713, 1717, 85 L.Ed.2d 24 (1985); *City of Lafayette v. Louisiana Power & Light Co.*, 435 U.S. 389, 412–13, 98 S.Ct. 1123, 1136–37, 55 L.Ed.2d 364 (1978).

■ The Supreme Court clarified the application of *Parker* state action immunity to municipalities in *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 40, 105 S.Ct. 1713, 1717, 85 L.Ed.2d 24 (1985). In *Town of Hallie*, several unincorporated Wisconsin townships alleged that Eau Claire violated the Sherman Act by monopolizing the area's sewage treatment services and by refusing to provide sewage treatment to townships which were not annexed to Eau Claire. The Court examined Wisconsin statutes which granted cities the authority to develop sewage systems and to select the areas to be served. *Id.*, at 41, 105 S.Ct. at 1717. *See* Wis.Stat. § 62.18(1) (1981–1982). From this delegation of power, the Court found that suppression of competition was a foreseeable result. As long as a city's anticompetitive conduct is the foreseeable result of state statutes, the state

legislature need not state explicitly that it expected the cities to suppress competition through its actions. In sum, the state action doctrine immunizes the anticompetitive conduct of municipalities which is the foreseeable result of state law.[3]

More recently, the Supreme Court discussed the application of state action immunity to municipalities in *City of Columbia v. Omni Outdoor Advertising, Inc.*, 499 U.S. 365, 111 S.Ct. 1344, 113 L.Ed.2d 382 (1991), and again used the foreseeability standard to determine whether a city's actions were immune from liability under the Sherman Act. In *City of Columbia*, a city passed an extremely restrictive billboard zoning regulation at the urging of a South Carolina corporation which effectively preserved the corporation's existing monopoly on local billboards. A prospective competitor complained that the ordinance and the conspiracy between the city and the South Carolina corporation violated federal antitrust laws. The Court held that both the city and the corporation were immune from federal antitrust liability because the city had been delegated the zoning power to regulate the size, location and spacing of billboards and that suppression of competition is the foreseeable result of the state's authorization. *Id.*, 499 U.S. at 373, 111 S.Ct. at 1350. The Court was clear that the state statute does not need to "explicitly permit the displacement of competition."[4] *Id.*, 499 U.S. at 372, 111 S.Ct. at 1350.

The Eleventh Circuit, in *McCallum v. City of Athens, Ga*, 976 F.2d 649, 652–53 (11th Cir.1992),[5] summarized the foreseeability test as follows, "to enjoy immunity from federal antitrust liability, the city must establish that

---

3. The Court, in *Town of Hallie*, rejected the notion that local regulation had to be actively supervised by the state in order for immunity to attach. *Town of Hallie*, 471 U.S. at 47, 105 S.Ct. at 1720 ("Once it is clear that state authorization exists, there is no need to require the State to supervise actively the municipality's execution of what is a properly delegated function").

4. While the statute need not expressly endorse suppression of competition, a position of mere neutrality towards the challenged action will not suffice to cloak the municipality with immunity. *See Community Communications Co. v. City of Boulder*, 455 U.S. 40, 55, 102 S.Ct. 835, 843, 70 L.Ed.2d 810 (1982). In *City of Boulder*, the

Court found no immunity flowing from a constitutional provision granting cities "the full right of self-government in both local and municipal matters" where neither the Constitution nor a statute addressed the area of regulation at issue. *Id.* at 43, 102 S.Ct. at 837.

5. *McCallum* involved a challenge to the City of Athens' for-profit waterworks which charged nonresidents a higher rate than that charged to Athens residents. After comparing Georgia's statutory scheme to that in *Town of Hallie*, the Court of Appeals held that Georgia's municipal waterworks statutes authorized the state's subdivisions to engage in anticompetitive conduct.

(1) the state has generally authorized the city to perform the challenged action, and (2) the 'suppression of competition is the foreseeable result of what the statute authorizes.'" *Id.* at 652 (*quoting City of Columbia*, 499 U.S. at 373, 111 S.Ct. at 1350.)

In the present case, Georgia's Constitution authorizes its counties and municipalities to provide "[g]arbage and solid waste collection and disposal." Ga. Const. Art. 9, § 2, ¶ 3(a)(2). More specifically, the Georgia legislature has enabled authorities [6] to enter agreements "for an exclusive right or rights in any authority with respect to such solid waste, including, but not limited to, the exclusive right to collect, acquire ..., or dispose of discarded solid waste...." O.C.G.A. § 12–8–51(b). The authorities also have the power to enter into contracts and leases necessary or convenient for their projects, and the ability to contract with other counties and municipalities concerning project facilities for a term not exceeding 50 years. O.C.G.A. § 12–8–56(5). Lastly, the Georgia legislature has emphasized that local governing authorities are acting pursuant to state policy when they carry out delegated powers, and, in so doing, the authorities shall be immune from antitrust liability to the same degree as the state. O.C.G.A. §§ 36–65–1 to –2.[7]

■ Arguably, Georgia's grant of power to its solid waste authorities is comparable to that considered in *Town of Hallie* and *McCallum*. Nevertheless, Georgia cannot grant its local governments the authority to violate the Commerce Clause.

The United States Supreme Court recently addressed the limitations of the Commerce Clause on local government regulation of the solid waste processing markets. *C & A Carbone, Inc. v. Town of Clarkstown, N.Y.,* ——

U.S. ——, 114 S.Ct. 1677, —— L.Ed.2d —— (1994). The case is more completely discussed below in the court's assessment of plaintiffs' Commerce Clause claim. However, the case also affects plaintiffs' antitrust claim. The Court, in *Carbone,* found that the town's flow control ordinance which required all nonhazardous solid waste within the town to be processed at a specific transfer station to be an unconstitutional restriction on interstate commerce. *Id.* —— U.S. at ——, 114 S.Ct. at 1682. The ordinance solidified a financing arrangement whereby the cost of constructing the transfer station by a private operator would be subsidized by the station's revenues for the first five years and then the station would be deeded over to the town. *Id.* at ——, 114 S.Ct. at 1680.

■ Defendants urge that Georgia allows its local governments to exclude all competition in the waste disposal market within their jurisdiction and, hence, the activity is immune from the antitrust laws under *Parker.* However, a state cannot authorize activity which violates the Commerce Clause. If the court interprets O.C.G.A. § 12–8–51(b) to allow Butts County to exclude plaintiffs from the solid waste disposal market, then the Georgia statute would conflict with the Commerce Clause as interpreted by the United States Supreme Court in *Carbone.* Accordingly, taking a restrictive view of the state authorization, the court finds defendants' conduct is not entitled to state action immunity.

■ Defendants also contend that plaintiffs have not shown that they are prepared to enter the market and therefore can not bring an antitrust claim. *Gas Utilities Co. v. Southern Natural Gas,* 996 F.2d 282 (11th Cir.1993) (requiring plaintiff to show financial ability in order to bring antitrust claim).

---

**6.** The Georgia legislature created a "solid waste management authority" for each county and municipal corporation provided the governing body of the county or municipality declares that a need exists for the authority to function. O.C.G.A. § 12–8–53(a).

**7.** Section 36–65–1 provides, in pertinent part, that "in the exercise of powers specifically granted to them by law, local governing authorities of cities and counties are acting pursuant to state policy." Section 36–65–2 provides that "[t]his

chapter is intended to articulate clearly and express affirmatively the policy of the State of Georgia that in the exercise of such powers, such local governing authorities shall be immune from antitrust liability to the same degree and extent as enjoyed by the State of Georgia." The Eleventh Circuit Court of Appeals, in *McCallum,* noted that these two statutes evidenced "Georgia's express contemplation of municipal anticompetitive conduct." *McCallum,* 976 F.2d at 655.

**1272**

Even under the more extensive test set forth in *Jayco Sys. v. Savin Business Mach. Corp.*, 777 F.2d 306, 314 (5th Cir.1985),[8] Pine Ridge has adequately demonstrated that they are prepared to enter the market. Plaintiffs have extensive past experience in subtitle D landfills. Moreover, they have an option on land in Butts County, have expended large sums of money preparing to enter the market, and have aggressively attempted to obtain an EPD permit despite defendants' opposition.

Lastly, plaintiffs have alleged concerted activity between defendants and between defendants and third parties as required by §§ 1 and 2 of the Sherman Act. Defendants' contention that the Board and the Authority are not separate entities for purposes of the Sherman Act is more appropriately asserted in a motion for summary judgment once sufficient facts have been established.

Accordingly, defendants' motion to dismiss Counts One, Two, Three, and Four is **DENIED** as to all defendants.

 In connection with the antitrust claims, plaintiffs have asserted a claim for attorney's fees. Defendants argue that attorney's fees should not be awarded against a local government for violation of the antitrust laws due to the prohibition in the LGAIA. The LGAIA prohibits recovery of damages, interest on damages, costs, or attorney's fees in any antitrust action against a local government. Plaintiffs, acknowledging this prohibition, have withdrawn their prayer for treble

damages based upon the antitrust laws. Nevertheless, a plaintiff who substantially prevails in an action for injunctive relief is entitled to an award of costs, including a reasonable attorney's fee. 15 U.S.C. § 26. In light of this authority, defendants' motion to dismiss plaintiffs' claim for attorney's fees and costs must be **DENIED.** Entitlement to costs and attorney's fees will depend on plaintiffs' level of success in obtaining injunctive relief under the antitrust laws.

### C. RICO CLAIMS

Count Five charges that all of the defendants, except the Authority, entered into a conspiracy in violation of 18 U.S.C. § 1962(c) and (d).[9] Count Six charges a pattern of racketeering on behalf of defendants R. Wesley Haley[10] and the Butts County Board of Commissioners. Counts Five and Six are brought under 18 U.S.C. § 1964(c) which provides for treble damages and attorney's fees.

Defendants attack the RICO claims based on three contentions. First, defendants argue that the RICO claims against the government entities should be dismissed because these defendants are not capable of possessing the requisite criminal intent or, alternatively, because the penalties are punitive in nature and should not be imposed upon a local government entity absent express statutory authority. The issue of whether local government entities are subject to RICO has been addressed by several district courts and two appellate courts.[11]

---

8. The court, in *Jayco*, looked at whether the plaintiff (1) has the financial ability to start the business; (2) has entered into contracts concerning the business; (3) has taken affirmative action to enter the market; (4) has the necessary background and experience in the prospective business. *Jayco*, 777 F.2d at 314.

9. To state a civil claim under R.I.C.O., a claimant must allege:

(1) that a person (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate commerce. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 3285, 87 L.Ed.2d 346 (1985). A "pattern" under R.I.C.O. "requires at least two acts of racketeering activity" within a ten year

period, 18 U.S.C. § 1961(5), or multiple predicates within a single scheme that amounted to criminal activity. *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 236, 109 S.Ct. 2893, 2899, 106 L.Ed.2d 195 (1989). A civil R.I.C.O. claimant must prove conduct that is indictable, and offenses that are punishable under various criminal statutes. *Sedima*, 473 U.S. at 488, 105 S.Ct. at 3280.

10. Mr. Haley is chairman of the Butts County Board of Commissioners.

11. *Lancaster Community Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 404 (9th Cir.1991); *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 908 (3d Cir.1991); *County of Oakland v. City of Detroit*, 784 F.Supp. 1275, 1283 (E.D.Mich. 1992); *In re Citisource, Inc. Sec. Lit.*, 694 F.Supp. 1069 (S.D.N.Y.1988); *Massey v. City of Oklahoma*, 643 F.Supp. 81, 85 (W.D.Okl.1986).

■ Liability under civil RICO, 18 U.S.C. § 1962, may be imposed upon any "person," defined as "any individual or entity capable of holding a legal or beneficial interest in property." *See* 18 U.S.C. § 1961(3). Since Georgia has empowered its counties and solid waste authorities to own interests in property, such entities are "persons" subject to the application of civil RICO. *See County of Oakland v. City of Detroit*, 784 F.Supp. 1275, 1283 (E.D.Mich.1992); *Biondolillo v. City of Sunrise*, 736 F.Supp. 258, 260–61 (S.D.Fla. 1990); *In re Citisource, Inc. Sec. Lit.*, 694 F.Supp. 1069 (S.D.N.Y.1988); *Massey v. Oklahoma City*, 643 F.Supp. 81, 85 (W.D.Okl. 1986). The conclusion that defendants are "persons" within the meaning of RICO, 18 U.S.C. § 1961(3), does not end the inquiry.

■ A "person" is liable under RICO only if he manifests a specific intent associated with the predicate offenses.[12] *See Genty v. Resolution Trust Corp.*, 937 F.2d 899, 908 (3d Cir.1991). Most courts which have considered the question have held that a municipal corporation can not form the requisite criminal intent. In *Lancaster Community Hosp. v. Antelope Valley Hosp. Dist.*, 940 F.2d 397, 404 (9th Cir.1991), the Ninth Circuit held that civil RICO claims against a local government hospital district were properly dismissed because "government entities are incapable of forming a malicious intent." *Id. See also In re Citisource*, 694 F.Supp. at 1079–80 (while a municipal corporation can be a "person" under the RICO statute, it is incapable of the criminal intent necessary to support the predicate offenses). Nor can the doctrine of respondeat superior be used to impute the criminal intent of agents to the government entity itself. *See In re Citisource*, 694 F.Supp. at 1080 (citations omitted).

Defendants also argue that government entities are not liable under RICO because a county or municipality cannot be liable for punitive damages unless a statute expressly allows for such a recovery. *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 260, 101 S.Ct. 2748, 2756, 69 L.Ed.2d 616, 627 (1981). The

common law prohibition is based upon the reasoning that imposition of punitive damages against a government entity serves neither the deterrent or retributive purposes of the punishment and merely serves to punish the taxpayers. *Genty*, 937 F.2d at 910–11.

■ Even accepting the conclusion that punitive damages can not be imposed against a government entity, plaintiffs urge that RICO liability is remedial rather than punitive. Courts are somewhat divided on this issue. In *Genty*, the Third Circuit did not decide the question of whether a municipal corporation is capable of forming the mens rea to commit predicate acts, but nonetheless held that a municipality cannot be held liable under civil RICO because the treble damages mandated by 18 U.S.C. § 1964(c) are "punitive" in nature, and therefore cannot be imposed upon municipalities which have historically been immune from exemplary damages. *Id.* at 910. *See also Southwest Marine, Inc. v. Triple A Machine Shop, Inc.*, 720 F.Supp. 805, 810 (N.D.Cal.1989) (holding that RICO's treble damages are per se punitive). On the other hand, the Supreme Court has indicated in dicta that the treble damages available in a civil RICO action are primarily remedial, and secondarily punitive. *See Shearson/American Express Inc. v. McMahon*, 482 U.S. 220, 240–41, 107 S.Ct. 2332, 2344–45, 96 L.Ed.2d 185, 202–03 (1987) (noting that legislative history of § 1964(c) emphasizes remedial role of treble damages provision). In the court's best judgment, RICO's treble damages are punitive and fail to achieve either the goal of retribution or deterrence when imposed upon a municipality. *See Newport*, 453 U.S. at 267–68, 101 S.Ct. at 2759–60, 69 L.Ed.2d at 632–33. Having concluded that a government entity can not form the requisite criminal intent to establish a RICO claim, the court need not rest its decision on the punitive nature of RICO liability.

■ Accordingly, the Court holds that, although the Butts County Board and the Authority are "persons" within the meaning of 18 U.S.C. § 1961(3), they are incapable of

**12.** Plaintiffs have alleged mail fraud as the predicate offenses which create a pattern of racketeer- ing.

forming the criminal intent necessary for the commission of the predicate offenses alleged, and, therefore, cannot be held civilly liable under 18 U.S.C. § 1964(c).[13] Counts Five and Six are **DISMISSED** against Butts County, Georgia, its Board of Commissioners, the Butts County Solid Waste Management Authority, and their members in their official capacities. The counts are not dismissed as to defendant members of the Board and Authority who have been sued in their individual capacities. As these individual defendants remain, the court will address the other challenges to Counts Five and Six raised by defendants.

Defendants contend that in order to establish a RICO claim plaintiff must show that they, rather than a third party, relied upon the fraudulent actions. Defendants cite *Pelletier v. Zweifel*, 921 F.2d 1465 (11th Cir. 1991), as requiring a plaintiff to prove his reliance on the predicate offense. However, *Pelletier* requires no such thing; instead, the case holds that a private plaintiff under RICO must show that he suffered injury as a proximate cause of the offense. In an effort to distinguish between RICO cases brought by private plaintiffs and those brought by the government, the court, in *Pelletier*, explained, "section 1964(c), as interpreted by the Supreme Court and lower courts, thus imposes a proximate cause requirement: the plaintiff's injury must have been proximately caused by the commission of the predicate acts." *Pelletier*, 921 F.2d at 1499 (*citing Zervas v. Faulkner*, 861 F.2d 823, 834–35 (5th Cir.1988)).

█ In a case where the mail fraud is directed at a third party, reliance by that third party can cause injury to the plaintiff. A plaintiff need only show that the third party relied and that this reliance proximately caused plaintiff's injury. Plaintiffs have alleged such injury.

█ Lastly, defendants argue that plaintiffs have failed to plead fraud with sufficient particularity. With this contention, the court must disagree. The requirement of particularity protects defendants from spurious charges. *Mathis v. Velsicol Chem. Corp.*, 786 F.Supp. 971, 976 (N.D.Ga.1991). The complaint adequately apprises defendants of the plaintiffs' claims and specifies the actions upon which the fraud claims are based. Plaintiffs have alleged two specific incidences of mail fraud. First, plaintiffs allege that Mr. Haley wrote a letter to Georgia EPD manager Jim Dunbar on August 25, 1992. *See* Complaint ¶ 59. Second, the complaint charges that Haley again furthered the conspiracy on July 23, 1993, when using the U.S. mails he wrote Georgia EPD informing them that the Pine Ridge site did not comply with the "Butts Plan." *See* Complaint ¶ 85. Understandably, having been written before any discovery was conducted, other allegations are broad. Nevertheless, the complaint does withstand the scrutiny applied to fraud allegations.

In sum, the RICO claims, Counts Five and Six, are DISMISSED against Butts County, the Butts County Board of Commissioners, and the Solid Waste Authority. The Counts remain pending against the individual defendants in their individual but not in their official capacities.

### D. COMMERCE CLAUSE CLAIM

█ Plaintiffs charge that defendants' actions have violated the Commerce Clause of the United States Constitution by prohibiting Pine Ridge from accepting out-of-state solid waste or solid waste generated outside of a thirty-mile radius from the site.[14]

A recent United States Supreme Court decision, *C & A Carbone, Inc. v. Town of Clarkstown, N.Y.*, —— U.S. ——, 114 S.Ct. 1677, 128 L.Ed.2d 399 (1994), raised issues very similar to this case. In *Carbone*, the town adopted a flow control ordinance requiring all nonhazardous solid waste within Clarkstown to be processed at the town

---

**13.** Plaintiffs argue that even if the court finds that treble damages can not be imposed upon a municipality, the court retains the option of imposing injunctive relief. Yet, plaintiffs have cited no support for that proposition.

**14.** The Commerce Clause claim is brought under 42 U.S.C. § 1983.

transfer station.[15] The ordinance applied to all solid waste found within the town limits, regardless of where it was generated or whether the waste had already been sorted by another facility. The purpose of the ordinance was to subsidize the construction of the transfer station. *Carbone*, —— U.S. at ——, 114 S.Ct. at 1680. The effect of the statute was to squelch competition from other processors in the town such as Carbone.

Initially, the Court found that the ordinance had an interstate economic impact in that out-of-state waste producers who disposed of waste with Clarkstown facilities would be required to pay the additional tipping fee at the Clarkstown transfer station. *Id.* at ——, 114 S.Ct. at 1681. Even as to local waste, the ordinance favors the one transfer station and deprives out-of-state interests of access to the local waste processing market. *Id.*

Further, the Court held that the ordinance discriminates against out-of-state commerce in favor of a local interest in violation of the Commerce Clause.[16] *Id.* at ——, 114 S.Ct. at 1682. "Discrimination against interstate commerce in favor of local business or investment is per se invalid, save in a narrow class of cases in which the municipality can demonstrate, under rigorous scrutiny, that it has no other means to advance a legitimate local interest." *Id.* at ——, 114 S.Ct. at 1683. *See also Wyoming v. Oklahoma,* 502 U.S. 437, —— – ——, 112 S.Ct. 789, —— – ——, 117 L.Ed.2d 1 (1992); *Maine v. Taylor,* 477 U.S. 131, 138, 106 S.Ct. 2440, 2447, 91 L.Ed.2d 110 (1986). The court found meaningless the distinction that the ordinance favored one particular interest rather than a number of local businesses as in *Dean Milk Co. v. Madison,* 340 U.S. 349, 71 S.Ct. 295, 95 L.Ed. 329 (1951).

Similarly, the Butts County Board and Authority have engineered to prohibit a competitor from entering the waste disposal market so that the Authority can subsidize constructing a new Subtitle D landfill.[17] It should make little difference that the Butts Authority owns its MSWLF currently and the facility in *Carbone* would be turned over to the town after five years of private operation. Such a distinction would focus on form and ignore substance. Accordingly, in light of *Carbone,* defendants' motion to dismiss Count Seven is **DENIED**.

### E. FIRST AMENDMENT CLAIM

 Plaintiff Stephen Dale brings Count Ten under 42 U.S.C. § 1983 and 42 U.S.C. § 1988 charging that defendant Grizell acting in concert with the other defendants abridged Dale's right to freedom of speech by swearing out an arrest warrant for alleged "fighting words." Plaintiff has stated a claim for relief under § 1983, to wit, a state actor maliciously swore out an arrest warrant in retaliation for Mr. Dale's free speech. A determination of whether the exchange constituted "fighting words" under O.C.G.A. § 16–11–39 is a factual matter. *See Wilson v. Attaway,* 757 F.2d 1227, 1246 (11th Cir. 1985) (quoting *Lewis v. City of New Orleans,* 415 U.S. 130, 135, 94 S.Ct. 970, 973, 39 L.Ed.2d 214 (1974) (Powell, J., concurring)). Accordingly, the claim against Grizell is not suitable for dismissal on the pleadings.

 Plaintiff Dale brings Count Ten against Grizell and Butts County, apparently seeking to employ the doctrine of *respondeat superior* to impose liability on the county. The courts have unanimously held that the Civil Rights Act precludes the finding of

---

**15.** The transfer station was constructed by a private contractor who would operate the facility for five years at which time the town would purchase the station for one dollar. The construction of the facility was financed through the town's guarantee of a minimum solid waste flow through the station at a minimum tipping fee during the first five years. *Carbone,* —— U.S. at ——, 114 S.Ct. at 1680.

**16.** Justice O'Connor concurred in the Court's ultimate conclusion, but argued that the ordinance violated the Commerce Clause because it

imposed an excessive burden on interstate commerce. *Carbone,* —— U.S. at ——, 114 S.Ct. at 1687 (concurring opinion). *See Brown–Forman Distillers Corp. v. New York State Liquor Authority,* 476 U.S. 573, 579, 106 S.Ct. 2080, 2084, 90 L.Ed.2d 552 (1986); *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970).

**17.** The article of commerce is not the solid waste itself, but rather the processing and disposing of it. *Carbone,* —— U.S. at ——, 114 S.Ct. at 1683.

**1276**

liability on the basis of a supervisory position alone. *Polk County v. Dodson,* 454 U.S. 312, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981); *Monell v. Department of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The pleadings fail to allege specific facts which would bind the county but does allege that Grizell acted in concert with other defendants. Accordingly, plaintiff shall have an opportunity to develop facts showing approval or involvement by county officials. Defendants' motion to dismiss is **DENIED** as to Count Ten.

### III. CONCLUSION

The motion to dismiss the complaint is **GRANTED IN PART** and **DENIED IN PART.** Defendants' motion is **DENIED** as to Counts One, Two, Three, and Four. Counts Five and Six are **DISMISSED** against Butts County, Georgia, its Board of Commissioners, the Butts County Solid Waste Management Authority, and their members in their official capacities. Counts Five and Six remain pending against the individual defendants in their individual capacities. Defendants' motion to dismiss is **DENIED** as to Counts Seven, Nine, and Ten.

**SO ORDERED.**