**PINE RIDGE RECYCLING, INC., et al.,**

v.

**BUTTS COUNTY, GA, et al., Defendants.**

**Civ. A. No. 93–426–2–MAC (WDO).**

United States District Court,
M.D. Georgia,
Macon Division.

Sept. 15, 1994.

Stephen E. O'Day, Clark G. Sullivan, Atlanta, GA, George E. Butler, II, Atlanta, GA, for plaintiff.

Joseph R. Cullens, Jack N. Sibley, H. Lane Young, II, Nickolas P. Chilivis, Atlanta, GA, for defendants.

### ORDER

OWENS, Chief Judge.

This action seeks to prevent Butts County, Georgia, its Board of Commissioners ("Board"), the Butts County Solid Waste Management Authority ("Authority"), and their individual members from opposing or otherwise interfering with the establishment of Pine Ridge's municipal solid waste landfill ("MSWLF"). Plaintiffs Pine Ridge Recycling, Inc. ("Pine Ridge") and Stephen Dale have moved for preliminary injunctive relief based on violations of the Sherman Antitrust Act ("Sherman Act"), 15 U.S.C. §§ 1, *et seq.,* the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.,* and the Commerce Clause of the United States Constitution, U.S. Const. Art. 1, § 8, cl. 3. The court held a hearing on the motion on January 27, 1994, and requested further briefing after limited discovery. Defendants strenuously oppose the motion. After careful consideration of the arguments of counsel, the relevant case law, and the record as a whole, the court makes the following findings of fact and conclusions of law.

### I. FINDINGS OF FACT

1. The Butts County Board of Commissioners is a governing authority in the State of Georgia, governing pursuant to authority granted by the Georgia Constitution and state statute.

2. The Butts County Solid Waste Management Authority was created pursuant to O.C.G.A. § 12–8–53(a) and operates a MSWLF in Butts County, Georgia ("the Butts landfill").

3. A MSWLF is a sanitary landfill which accepts any non-hazardous solid waste.

4. Effective in the early 1990s, federal regulations, known as "Subtitle D," tightened the requirements on MSWLFs.[1] The Authority's current MSWLF does not comply with "Subtitle D", but the county intends to build and operate a conforming MSWLF before the expiration of the expansion permit.

5. In 1993, the Authority applied for and received a vertical expansion permit from the Georgia Environmental Protection Division ("EPD") to continue receiving waste at its existing landfill until July 1, 1998. The vertical expansion permit allows the Authority to dispose of an unlimited amount of solid waste until July 1998.

6. Landfills in several neighboring counties have closed recently because of the Subtitle D regulations. (Kamerschen Supp.Aff. App. B.)

7. Due to these closures, the Butts landfill has been able to increase its intake of waste by 148% since obtaining its vertical expansion permit. (Wiltzee Aff. Exh. A.)

8. Since November 1991, revenues at the Butts landfill have risen from $0.00 to $680,000 per year. During that same period, defendants' share of the solid waste disposal market in Butts County has risen from 12.3% to 96%. Defendants share of the Spalding and Henry County markets have increased from 0% to 95% and from 0% to 48%, respectively.[2] (Wiltzee Aff. Exh. A.)

9. Defendants generally charge $18.00 per ton to dispose of residential waste originating outside Butts County and $20.50 per ton for most commercial waste. (Grizell Depo., pp. 10–25.) Defendants earn a profit

---

1. Subtitle D refers to a subtitle of the Federal Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. §§ 6941, *et seq,* and its implementing regulations. 40 C.F.R. Part 258.

2. The figures for Spalding County exclude waste disposed of at the Southern States transfer station as discussed in paragraphs 20–24 the conclusions of law.

of 121% on disposal of commercial waste. (Kamerschen Depo., p. 132.)

10. Defendants plan to use the profits from the current landfill to build a Subtitle D landfill before the vertical expansion permit expires on July 1, 1998.

11. The Butts landfill is managed by defendant Gary Grizzell who is employed by the Authority.

12. Pine Ridge was incorporated for the purpose of developing and operating MSWLFs within Georgia.

13. Pine Ridge has purchased a 201 acre site in southwest Butts County on the border of Spalding County for approximately $290,000 and plans to construct a "Subtitle D" MSWLF thereon ("the Pine Ridge site"). (Dale Depo. II, p. 77; Exh. P–88, P–89.)

14. In addition to purchasing the land, Pine Ridge has invested over $1,000,000 in planning and developing the Pine Ridge landfill. (Dale Aff. ¶ 9.)

15. Pine Ridge has the financial capability to complete the landfill. (Dale Aff. ¶ 10.)

16. Once permitted, Pine Ridge can be in operation in approximately 12 months. (Wiltzee Aff. Exh. B.) The principals of Pine Ridge plan to focus on Butts, Henry, and Spalding Counties as principal market areas, but will accept waste from a range of 30 miles or more. (Dale Depo. I, p. 10; Transcript of 1/27/94 hrg., p. 124.)

17. Pine Ridge has agreed to accept Spalding County's waste for $20.00 per ton, and expects to operate profitably by charging $20.00 per ton to waste haulers. (Dale Depo. I, p. 13–14, 111.)

18. Pine Ridge has not received a permit from Georgia EPD and can not begin construction of its proposed facility until a permit is issued.

19. Georgia EPD has completed its review of Pine Ridge's permit application and will issue a permit contingent upon the following: (1) a letter from Butts County to EPD that the site is consistent with Butts County's solid waste management plan; (2) a letter from Butts County to EPD that the site complies with local land use and zoning ordinances; and (3) defendants must hold a public hearing required by O.C.G.A. §. 12–8–24(e)(2). (Dale Aff., Exh. A.)

20. Georgia statute requires cities and counties to develop solid waste disposal plans assuring adequate disposal capacity over the next ten years. O.C.G.A. § 12–8–31.1.

21. Butts County has developed a solid waste disposal plan, but denies that the Pine Ridge site is consistent with the plan. This issue was recently addressed by the Superior Court of Butts County which granted summary judgment to Pine Ridge. *Pine Ridge Recyling, Inc. v. Butts County, et al.,* Civ. Action No. 92–659 (Butts Sup.Ct.) ("Butts II").

22. Defendants argue that addition of the Pine Ridge facility will increase the amount of waste received at disposal facilities in contravention of O.C.G.A. § 12–8–21(c) and 12–8–39.1 which require counties to have a program for reduction of the amount of municipal solid waste received at such facilities by 25%.

23. The Georgia Court of Appeals affirmed the trial court's mandamus requiring Butts County to verify to EPD that the Pine Ridge site is consistent with the Butts Waste Plan. *Butts County, et al. v. Pine Ridge Recycling, Inc.,* 213 Ga.App. 510, 445 S.E.2d 294 (1994).

24. On April 23, 1992, the Butts County Board of Zoning Appeals granted Pine Ridge's application for a Special Exception to the Butts County Zoning Ordinance allowing construction of a MSWLF. (Dale Aff., ¶ 8.)

25. The Special Exception is being challenged in two state suits, *Pine Ridge Recycling, Inc. v. Butts County, et al.,* Civ Action No. 92–285 (Butts Sup.Ct.) ("Butts I") and *Crossland v. Butts County Zoning Board of Appeals,* Civ Action No. 92–279 (Butts Sup. Ct.) ("Crossland").

## II. CONCLUSIONS OF LAW

### A. Abstention

1. This case presents issues of federal law, predominantly antitrust law and violations of the Commerce Clause. The legal issues presented do not mirror those pre-

sented in the various state court cases involving these parties.

2. The court has not been asked to overrule current state court judgments. *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923).

3. Abstention is not required because this court has not been asked to determine the constitutionality of a state statute. *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

4. The court declines to abstain from exercising jurisdiction in this matter.

### B. Preliminary Injunction

5. A preliminary injunction under Rule 65 is an extraordinary remedy which should be granted only if the moving party clearly establishes: (1) a substantial likelihood that he will ultimately prevail on the merits; (2) a showing that he will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to him outweighs whatever damage the proposed injunction may cause the opposing party; and (4) a showing that the injunction, if issued, would not be adverse to the public interest. *Lucero v. Operation Rescue,* 954 F.2d 624, 627 (11th Cir.1992); *Tally–Ho, Inc. v. Coast Community College,* 889 F.2d 1018, 1022 (11th Cir. 1989); *Johnson v. U.S. Dep't of Agriculture,* 734 F.2d 774, 781 (11th Cir.1984).

6. "The preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant 'clearly carries the burden of persuasion' as to the four prerequisites." *United States v. Jefferson County,* 720 F.2d 1511, 1519 (11th Cir.1983) (*quoting Canal Authority v. Callaway,* 489 F.2d 567 (5th Cir.1974)).

7. Plaintiffs have sufficiently demonstrated the last three requirements for a preliminary injunction.

8. First, Pine Ridge will suffer irreparable harm the longer it is delayed from obtaining a permit, in that they will be precluded from entering disposal contracts with surrounding counties. *See GSW, Inc. v. Long County,* 999 F.2d 1508, 1519 (11th Cir. 1993).

9. Because state law requires counties to have a plan assuring adequate solid waste disposal over the next ten years, counties will be entering into long term disposal contracts with landfills. The longer Pine Ridge is delayed from becoming operational, the less chance it will have to contract with counties which are committed to long term contracts with other landfills.

10. Moreover, Pine Ridge incurs substantial monetary loss with each day that it is delayed in obtaining an EPD permit. In light of the Local Government Antitrust Immunity Act ("LGAIA"), 15 U.S.C. § 35(a), plaintiffs can not recover damages from the county defendants. Hence, any money damages can not be regained.

11. Second, the court finds that the harm to plaintiffs absent an injunction substantially outweighs any potential harm to defendants from imposition of the injunction.

12. Absent an injunction, Pine Ridge can not obtain an EPD permit or begin construction of the landfill. This delay, in turn, causes a substantial monetary loss and prevents Pine Ridge from entering into contracts with waste generators and counties for solid waste disposal. Any injunctive relief granted will be tailored so as to limit harm to Butts County and its current customers.

13. Third, an injunction will have no detrimental effect on the public. The public interest is served by having safe and low-cost solid waste disposal facilities. An injunction will allow for competition in the solid waste disposal market and will likely lower prices in that market.

14. On the question of whether plaintiffs have adequately demonstrated a substantial likelihood of success on the merits, plaintiffs need only show a likelihood of success on one of their alternative theories of recovery in order to obtain injunctive relief.

15. Plaintiffs' main claims are based on the Sherman Antitrust Act and allege a monopoly, an attempted monopoly, a conspiracy to monopolize, and restraint of trade. Plaintiffs also allege that defendants have violated the Commerce Clause. (Complaint ¶¶ 123–146, 163–168.)

## C. Antitrust Claims

### 1. Product Market

16. A foremost issue in an antitrust action is defining the relevant product and geographic markets. Only after the markets are defined, can the court assess defendants' power within the relevant market. *Thompson v. Metropolitan Multi–List, Inc.,* 934 F.2d 1566, 1572 (11th Cir.1991).

17. The product market is defined as the business in which defendants are engaged unless a reasonably interchangeable substitute product is available to the consumers. *United States v. E.I. du Pont de Nemours & Co.,* 351 U.S. 377, 404, 76 S.Ct. 994, 1005, 100 L.Ed. 1264 (1956).

18. Defendants are engaged in the service of disposal of municipal solid waste at a landfill. Their customers are generators and haulers of municipal solid waste.

19. The parties dispute whether disposal of municipal solid waste at a transfer station is a part of the product market. Seemingly, customers would be indifferent whether their waste was disposed at a landfill or processed through a transfer station. However, in this region, the cost charged by a transfer station is prohibitive which places the transfer station outside the product market.

20. The Southern States transfer station in Griffin, Georgia, charges a minimum of $4.50 and up to $10.00 more per ton to dispose of waste than do defendants.

21. The contract between Southern States and the City of Griffin, Georgia, was agreed to before the Butts landfill obtained its vertical expansion permit. The Butts Authority could not bid on the contract and, thus, they were not in a competitive position with regard to this contract.

22. Disposal at the Southern States transfer station can not be seen as reasonably interchangeable with disposal at a MSWLF because of its increased cost.

23. Therefore, the waste disposed at the Southern States transfer station is captive waste and is not a part of the product market.

24. The product market is municipal solid waste disposed of at a sanitary landfill.

### 2. Geographic Market

25. A geographic market is essentially an economic concept in which the courts should examine "supplier-customer relations." *United States v. Philadelphia National Bank,* 374 U.S. 321, 357, 83 S.Ct. 1715, 1738, 10 L.Ed.2d 915 (1963).

26. The analysis includes consideration of where buyers seek supplies and sellers seek purchasers and an examination of transportation and other transaction costs. *Id.* at 358, 83 S.Ct. at 1738.

27. The geographic market has been described as "the market area in which the seller operates, and to which the purchaser can practicably turn for supplies." *Id.* at 359, 83 S.Ct. at 1739 (emphasis omitted) (*quoting Tampa Elec. Co. v. Nashville Coal Co.,* 365 U.S. 320, 327, 81 S.Ct. 623, 627, 5 L.Ed.2d 580 (1961)).

28. Butts County's MSWLF disposes of solid waste generated in a three-county area, that of Butts, Henry, and Spalding Counties ("the Butts Region").

29. Because of the limited suppliers of disposal services and the disparity of prices[3], defendants' customers have little alternative to using the Butts landfill.

30. Competition is also chilled because the Butts facility is the closest landfill to

---

3. The nearby landfills charge the following rates:
   1. The Southern States Transfer Station in Griffin, Georgia, receives waste under contract from Spalding County and charges between $25.06 and $30.50 per ton. Plaintiff's Findings of Fact, ¶¶ 46, 61.
   2. The BFI Hickory Ridge landfill in south Dekalb County receives waste from northern Henry County and charges $28.00 per ton. Kamerschen Supp. Aff. Doc. 1.

3. The Waste Management Live Oak landfill in south Dekalb County receives waste from north Henry County at a rate of $23.00 to $31.50 per ton. Kamerschen Supp. Aff. Doc. 2.

4. The Butts County landfill charges between $18.00 and $20.50 per ton and accepts waste from Henry, Spalding, and Butts Counties. Kamerschen Depo., p. 132.

much of the Butts region, and transportation costs for the waste are prohibitive.

31. Although defendants charge significantly less than their nearest competition, in Dekalb and Taylor counties, they remain able to operate at a profit of 121% and could raise their prices considerably without losing customers to competitors. Kamerschen Depo., p. 132.

32. The relevant geographic market for analyzing whether the Butts landfill is in a position of monopoly power is the three-county region of Henry, Spalding, and Butts counties ("the Butts Region"). The Butts landfill services that area and its customers have no practicable alternative to disposing their waste at the Butts landfill.

33. Another indication that the Butts Region is the appropriate geographic market is that "sellers within the area are making price decisions protected from the need to take account of sellers outside the area." *New York Citizens Committee v. Manhattan Cable TV,* 651 F.Supp. 802, 807 (S.D.N.Y.1986).

34. The relevant market is the disposal of municipal solid waste generated in the Butts Region at a sanitary landfill.

*3. Elements of Monopolization Claim*

35. Section 2 of the Sherman Act, 15 U.S.C. § 2, provides:

> Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be guilty of a felony . . . .

■ 36. The operation of the Butts County Landfill has an effect on interstate commerce. *Construction Aggregate Transport, Inc. v. Florida Rock Indus., Inc.,* 710 F.2d 752, 767 (11th Cir.1983).

37. A monopolization claim requires proof of two elements:

(1) defendants' possession of monopoly power; and

(2) defendants' willful acquisition and maintenance of that power.

*Eastman Kodak Co. v. Image Technical Services,* —— U.S. ——, ——, 112 S.Ct. 2072, 2089, 119 L.Ed.2d 265 (1992).

■ 38. Monopoly power can be shown by an ability to raise prices profitably or exclude competition. *United States v. E.I. du Pont de Nemours & Co.,* 351 U.S. 377, 391, 76 S.Ct. 994, 1005, 100 L.Ed. 1264 (1956). Plaintiffs have proffered impressive evidence that defendants have the ability to raise prices by 10% or more within the Butts Region without losing customers because the customers in that region have no competitive alternative to doing business with the Butts County landfill.

39. The Butts landfill has the power to raise prices by 5–10% in the geographic market which strongly indicates monopoly power. DOJ/FTC *Merger Guidelines,* p. S–3.

40. Due to significant transportation costs, neighboring landfills could not respond competitively to an increase in price by defendants. (Kamerschen Aff., ¶ 26.)

41. Monopoly power is also demonstrated by the increased market share and the increasingly highly concentrated structure of the market. (Kamerschen Aff., ¶ 27.)

### III. CONCLUSION

The court finds that plaintiffs have demonstrated a likelihood of prevailing on the monopolization claim and, therefore, a preliminary injunction shall issue.[4]

### IV. INJUNCTION

WHEREFORE, based upon the above findings of fact and conclusions of law, the following injunction is hereby issued:

(1) Defendants are enjoined from taking any action to further interfere, delay or obstruct the EPD permitting process for Pine Ridge's landfill in Butts County;

(2) Defendants are enjoined from casting any further doubt, through verbal or written

---

4. Having found a substantial likelihood that plaintiffs will prevail on the monopolization claim, the court will not address the merits of the other antitrust claims or the Commerce Clause claims.

communications, on the viability or chances for success of Pine Ridge's application for an EPD permit;

(3) Defendants are enjoined from entering any contract for disposal of solid waste which exceeds 6 months in length or which contemplates disposal of solid waste after 6 months from the date of its signing;

(4) Defendants are required to conduct a public hearing in accordance with O.C.G.A. § 12–8–24(e)(2);

(5) Defendants are further required to inform Georgia EPD by letter or other suitable means that

(a) the Pine Ridge site is consistent with the Butts County Solid Waste Plan; and

(b) that the Pine Ridge site complies with local zoning ordinances.

The preliminary injunction heretofore ordered shall issue upon plaintiffs giving security in the amount of $50,000.00 to the clerk of this court for the payment of such costs and damages as may be incurred or suffered by any party.

In order to afford defendants an opportunity to discuss the specifics of the local land uses ordinances, defendants are directed to **SHOW CAUSE** in writing filed within 10 days from and after this date why they should not also be required to certify to Georgia EPD that the Pine Ridge site is consistent with local land use ordinances.

**SO ORDERED.**