**PINE RIDGE RECYCLING,**
**INC., et al., Plaintiffs,**

v.

**BUTTS COUNTY, GEORGIA,**
**et al., Defendants.**

Civ. A. No. 93–426–2–MAC (WDO).

United States District Court,
M.D. Georgia,
Macon Division.

Dec. 2, 1994.

Stephen E. O'Day, Clark G. Sullivan, George E. Butler, II, Atlanta, GA, for plaintiffs.

Joseph R. Cullens, Jack N. Sibley, H. Lane Young, II, Nickolas P. Chilivis, Atlanta, GA, for defendants.

## ORDER

OWENS, District Judge.

On September 15, 1994, this court entered an order granting preliminary injunctive relief to plaintiffs, Pine Ridge Recycling, Inc., and Stephen M. Dale (collectively "Pine Ridge"). The order also directed defendants, Butts County (the County), to show cause why that preliminary injunctive relief should not also encompass a mandate of certification to the Georgia Environmental Protection Division ("EPD") that the site chosen by Pine Ridge for a solid waste landfill complies with local "land use" ordinances. Thus the question before the court is whether the County has produced evidence and reasons sufficient to establish "cause" for this court not to require it to certify to EPD that Pine Ridge's site complies with its "land use" ordinances. After careful consideration of the arguments of counsel, the relevant caselaw, and the record as a whole, the court issues the following order.

## I. FINDINGS OF FACT

### A. Background

Although the findings of fact in this court's previous orders, 855 F.Supp. 1264 (June 22, 1994), and 864 F.Supp. 1338 (1994), provide the necessary background information, the court thought it helpful to summarize the occurrences to date. In the early 1990s, changes in federal laws forced many municipal solid waste landfills ("MSWLF") out of business. Some of the MSWLFs, such as that operated by Butts County, survived. Concurrent with this thinning of market participants, Butts County's MSWLF operation began generating huge revenues, and profits of 121% on certain waste disposal, where none had existed before. This was due to the fact that the market share of Butts County's MSWLF for in-county solid waste disposal jumped from 12.3% to 96%. Similarly, defendant's market share of waste disposal in neighboring Spalding and Henry Counties rose dramatically.

At about the same time as this readjustment in market participants was transpiring, Pine Ridge was incorporated for the purpose of developing and operating MSWLFs in Georgia. Responding to bid requests by Butts County, Pine Ridge made two proposals for the construction of a MSWLF in Butts County. In anticipation of proposal acceptance, Pine Ridge purchased options on a 201–acre site, and began the process of site approval outlined in the Georgia Comprehensive Solid Waste Management Act ("GCSWMA").

The official charged with the responsibility for implementation of GCSWMA is the director of the Environmental Protection Division ("EPD") of the Georgia Department of Natural Resources. O.C.G.A. § 12–8–21(d) (1992). The director is supposed to coordinate the activities of his office with those of "local political jurisdictions so as to achieve a unified and effective solid waste management program in the state." Id. § 12–8–21(d) (1992 & Supp.1994). Consistent with this directive, the EPD will not approve a site without first receiving written verification that the site (1) complies with local land use and zoning ordinances, and (2) is consistent with the host jurisdiction's solid waste management plan ("plan").[1] Id. § 12–8–24(g) (1992 & Supp.1994). These two requirements have plagued Pine Ridge ever since it first applied to EPD for a permit in 1992.

#### 1. Plan Consistency

The latter requirement became the subject of state court litigation. In Butts County v. Pine Ridge Recycling, Inc. (Butts II), 213 Ga.App. 510, 445 S.E.2d 294 (1994), the Georgia Court of Appeals was called upon to determine whether the trial court had erred, in the context of a declaratory judgment

---

1. Pursuant to O.C.G.A. § 12–8–39.1 (1992 & Supp.1994), local governments were to have adopted a "Solid Waste Management Plan" on or before July 1, 1992. For a description of the County's "plan", see infra.

action, in ordering the County to verify that Pine Ridge's site was consistent with the local solid waste management plan. At trial, the County had attempted to deny the site's consistency with its solid waste plan by showing that approval of Pine Ridge's site would prevent the County's realization of its goal of a 25% reduction in solid waste disposal. Both the trial and appellate courts found this to be an unsatisfactory rationale for claiming inconsistency with the plan. "Plan" consistency should be determined solely by reference to "environmental and land use factors." *Butts II*, 445 S.E.2d at 295 (emphasis supplied).[2] The court of appeals found invalid the County's proffered justification for refusing to verify the site's consistency with its plan. Therefore, the appeals court affirmed the trial court's determination to issue a writ of mandamus compelling verification of plan consistency by the County.

### 2. Zoning Compliance

The former requirement (compliance with local land use and zoning ordinances) was bifurcated by the court's order of September 15, 1994: the County was required to certify to EPD the site's compliance with local zoning ordinances, but would also be allowed an opportunity to demonstrate why certification of compliance should not include land use ordinances as well. Zoning compliance has been achieved since the Butts County Board of Zoning Appeals granted Pine Ridge a special exception permit to develop and operate a MSWLF. (Dale Aff., at ¶ 8). The grant of this permit is being challenged in two state suits.[3]

**2.** *See infra* I.B. of the Opinion for the analysis of the Georgia Court of Appeals' opinion dealing with "land use" considerations. It is significant that the court in *Butts II* considered "land use factors," since the issue before this court is "land use ordinances."

**3.** In *Crosland v. Butts County Bd. of Zoning Appeals*, 448 S.E.2d 454, 214 Ga.App. 295 (1994), the Georgia Court of Appeals, in one of those two challenges, reversed the trial court's grant of summary judgment to Pine Ridge upholding the validity of the zoning exception. The reversal stemmed from the Board of Zoning Appeals' failure to comply with the Georgia Open Meetings Act. It would not appear that any objection has been raised in *Crosland* dealing with Pine

### B. Facts Regarding Local "Land Use" Compliance

The County is currently claiming that its "Litter Control"[4] and "Cemetery"[5] ordinances are local "land use" ordinances with which Pine Ridge has not complied.

The Litter Control ordinance's primary purpose is to assure that solid waste systems do not infringe upon the health, safety, and welfare of the County's citizens and the environment. It pursues this objective principally by regulating the manner in which refuse materials are disposed. For example, section 5.0 contains a general prohibition against the unsanctioned disposal of litter. It also lists as illegal activities the blocking of drainage ditches by litter, the abandonment of dangerous appliances such as refrigerators, and the transportation of refuse without an appropriate cover to keep it from being blown off. Section 5.1 outlines the rules about dumpsters to be maintained by the county, including who decides their placement, and what may or may not be placed within them. Section 5.2 makes it illegal for persons to "scavenge" from waste disposal areas, and section 5.3 requires private persons and businesses to maintain appropriate litter containers on their property.

Section 6.1 is the most germane to this situation. It requires persons who would operate private landfills to first obtain the proper permit from the Georgia Department of Natural Resources ("DNR"), and from the County, and to also obtain a business license from the County. The County will not issue a permit until all federal, state, and county regulations have been complied with.[6] The

Ridge's failure to comply with the dictates of the Cemetery ordinance, which was incorporated as a condition in the special exception permit being challenged in the *Crosland* action. *See infra* discussion of the Cemetery ordinance.

**4.** Adopted January 7, 1985; amended November 5, 1991; amended April 2, 1992; amended June 6, 1994. *See* Defendants' Brief, exh. A.

**5.** Adopted October 4, 1993; amended February 21, 1994. *See* Defendants' Brief, exh. B.

**6.** This would seem particularly difficult in most cases, since a state permit will not issue until local requirements have been met. Circularity is thus possible, and a person in Pine Ridge's shoes

section also contains a requirement of public notification prior to the Board's determination on permit issuance. The Board of Commissioners will consider the following factors in deciding whether a permit should issue or not: (1) consistency with the Litter ordinance's purposes, (2) importation of out-of-county waste, (3) pros and cons of a privately operated landfill, (4) any depreciating effects on surrounding properties, (5) deleterious effects on public infrastructure and services, and (6) an assessment of the competing positive and negative effects overall. The Litter Control Ordinance was adopted, not pursuant to Georgia's constitutional provision authorizing local governing authorities to enact planning and zoning ordinances, but rather under the "home rule" provision of the Georgia Constitution. *See* GA. CONST. art. IX, § 2, ¶¶ 1 and 4.

Section 6.3 of the Cemetery ordinance sets out the prohibited acts, including the willful disturbance of a burial place without having acquired a permit under O.C.G.A. § 36–72–1 (1993), and the failure of any person seeking a permit under the ordinance to not follow its dictates. The dictates referred to in section 6.3 include the "Responsibility For Registration" provisions of section 4.2. Under that section, persons "applying . . . for a permit for the use or development of property on which a cemetery or burial ground is located shall register the site." Additionally, those persons "applying for a zoning amendment/rezoning or for a special exception use permit . . . shall register any cemetery or burial ground thereon. . . ."

In seeking a permit, an applicant should first file an application with the County Zoning Administrator. This application should include the relevant particulars identified by the ordinance. The Zoning Administrator, provided with a list of guidelines, is charged with making a recommendation on the application first at a public hearing and then to the body with appropriate jurisdiction (either the Butts County Superior Court or the Board of Commissioners). It is then the Board of Commissioners' task to conduct a second public hearing for making the decision of whether or not to grant the permit. As with the Litter ordinance, the Board is furnished with a list of criteria to be considered.[7]

As mentioned above, the application for a "special exception" permit is one of the events triggering the responsibility to register a site under the County's Cemetery ordinance. Despite its application for a "special exception" permit, Pine Ridge has not registered under the Cemetery ordinance. On April 23, 1992, the Butts County Board of Appeals granted Pine Ridge's application for a "special exception" permit. This permit contained several conditions, one of which serves as a surrogate for the Cemetery ordinance. Condition number 8 states:

With respect to the cemetery located on the subject property, prior to the disturbance of any human remains or any grave, or any damage, Pine Ridge will develop plans for review and approval by the Citizens Advisory Committee regarding actions Pine Ridge shall take for the maintenance of the present site or actions to ensure that suitable arrangements are made for the proper removal and reinterment will be accomplished. Such plans will include, but not limited to, provisions assessing the burial place to determine the number of graves and the identity of the

cannot win. The court notes, however, that the County has not yet raised the argument that a permit cannot be issued under its Litter ordinance because of noncompliance with state regulations.

7. The Cemetery ordinance criteria are found in section 6.8(d):

The Board of Commissioners shall consider the following in making its determination:
1) The presumption in favor of leaving the cemetery or burial ground undisturbed;

2) The concerns and comments of any descendants of those buried in the burial ground or cemetery and any other interested parties;
3) The economic and other costs of mitigation;
4) The adequacy of the applicant's plans for disinterment and proper disposition of any human remains or burial objects;
5) The balancing of the applicant's interest in disinterment with the public's and any descendant's interest in the value of the undisturbed cultural and natural environment; and
6) Any other compelling factors which the governing authority deems relevant.

persons buried there: for obtaining the permission of the heirs of the persons buried there: the procedures to be followed where such permission is not obtained: and arrangements for the continued maintenance of the reinterment site and use by the heirs.

(Exh. M, attached to Aff. of Stephen Dale, 3/17/94.) The Butts County Board of Appeals could not have made condition 8 any more like the Cemetery ordinance except by making the ordinance itself the condition. *See supra* note 7. It is inconceivable that the Board of Appeals would have required compliance with both the Cemetery ordinance and condition 8. The court also finds remarkable the fact that the Cemetery ordinance was dealt with under a special exception to "zoning" (not land use) rules.

█ The necessity for compliance with the Litter Control and Cemetery ordinances was apparently first mentioned during a hearing in March 1992. (Defendants' exh. 8, at 58 and 78, attached to Transcript of Hearing on Jan. 27, 1994).[8] Indeed, after it was first mentioned at the March hearing, counsel for Pine Ridge acknowledged the necessity for complying with the Litter Control ordinance, and gave tacit recognition to the Cemetery ordinance. However, Stephen Dale of Pine Ridge concedes that Pine Ridge has never applied for a permit under the Litter Control ordinance, and even cancelled a hearing that was a prerequisite to permit approval under the Cemetery ordinance. (Deposition of Stephen Dale on 4/18/94, at 42, 60–61).[9]

Although the County was aware of the Litter Control and Cemetery ordinances in March 1992, it did not identify them as "land use" ordinances or otherwise in its initial contact with the EPD. In its initial response to EPD inquiry, the Board informed EPD of the status of the Pine Ridge site by letter dated August 25, 1992. (Plaintiffs' exh. 41, attached to Transcript of Hearing on Jan. 27, 1994). In pertinent part, the Board stated, "[t]he site does not conform to local zoning and land use. The issue of the zoning has been challenged in court and has not been decided." Although the County elaborated upon the status of the zoning compliance issue, it said nothing concerning "land use" requirements. The letter nowhere specified which local land use ordinances Pine Ridge was in violation of. Nor were the Litter Control and Cemetery ordinances mentioned. In a subsequent correspondence to EPD on July 23, 1993, the Board once again failed to mention noncompliance with either the Litter Control or Cemetery ordinances as an impediment precluding consistency with its plan. (Plaintiffs' exh. 50, attached to Transcript of Hearing on 1/27/94).

The multiple lawsuits spawned by this proposed landfill have amplified the confusion over the "land use" issue. As alluded to earlier in this opinion, *see supra* note 2 and

---

8. The exchange that occurred between the County's attorney and the chairman at this hearing seemingly indicates that the County, as of March 26, 1992, considered the Litter Control Ordinance to be a "zoning" ordinance.

   BY MR. HEMMANN: IT IS MY UNDERSTANDING THERE'S A SOLID WASTE ORDINANCE THAT THE COUNTY REQUIRES A PERMIT FOR ANY PRIVATE LANDFILL.

   BY CHAIRMAN MADDOX: DID YOU SAY OUR *ZONING* ORDINANCE?

   BY MR. HEMMANN: A SEPARATE *ZONING* ORDINANCE FOR THE SOLID WASTE ORDINANCE.

   Transcript of March 26, 1992 Hearing, at 58 (emphasis supplied).

9. This apparent contradiction by Pine Ridge disappears when considered in the context of this motion, where the issue is whether the County should be required to certify compliance with local "land use" ordinances. Pine Ridge's actions (or lack thereof) in regard to application under the Litter Control and Cemetery ordinances are not inappropriate if one considers that inaction in light of the illusive positions advanced by the County. The County's ever-changing position on which of their ordinances they consider as regulating land use, and which court is considering the land use compliance issue, has understandably engendered uncertainty on Pine Ridge's behalf in regard to what is required of them in the context of the EPD approval process.

   A determination by this court that Pine Ridge has complied with local "land use" ordinances does not mean, *a fortiori*, that the County may not enforce those ordinances not affecting land use. The court's ruling is premised on the finding that these are not "land use" ordinances. Therefore, they are not within the EPD approval framework. Plaintiffs must comply with these ordinances, and they concede as much. The County may accordingly enforce these ordinances.

accompanying text, this court may not be the first to have considered the issue of "land use" compliance. The Georgia Court of Appeals in *Butts II* found that a site's consistency with a host jurisdiction's "plan" should be determined solely by reference to "environmental and land use factors."[10] Accordingly, the County urged the Georgia appellate court to find that it had demonstrated "valid land use or environmental criteria for excluding the Pine Ridge site from its solid waste management plan." The County claimed that it had carried this burden at the trial level by raising such considerations as solid waste reduction, airport proximity, and voter support for public over private landfills.[11] But nowhere did the County raise either their Litter Control or Cemetery ordinances as "land use" factors that might affect the site's consistency with the "plan."

Other factual considerations also point to the conclusion that "land use" issues were addressed by *Butts II*. Before the appellate court in *Butts II* was the question of whether Pine Ridge's site was consistent with the County's "plan." According to O.C.G.A. § 12–8–31.1(a) (1992 & Supp.1994), the "plan" developed by a local jurisdiction should conform, at a minimum, to the "standards and procedures developed by the Department of Community Affairs." Those standards and procedures include a "land limitation element." The purpose of the land limitation element in a local jurisdiction's plan is to "insure that proposed solid waste handling facilities are sites in areas suitable for such developments, are compatible with surrounding uses, and are not considered for location in areas which have been identified

by the community or multi-jurisdictional area as having environmental or other development or land use limitation." Minimum Planning Standards and Procedures for Solid Waste Management: Local and Multi-jurisdictional Plans, at 16 (App. B to Plaintiffs' Brief in Opposition to Cause Shown) (emphasis supplied).

The County incorporated these standards in its plan, adopted November 16, 1992. Section 2.6 of the County's plan states, "In addition to the physical characteristics of the land, potential landfill sites must be considered in terms of their distances to airports, public surface water intakes, national historic sites, and county boundaries. Other significant limitations considered include county zoning ordinances, local and regional planning requirements and future land use goals." (Transcript of 1/27/94, exh. P–48, at 2–13). Moreover, potential sites for municipal solid waste landfills should be evaluated "in terms of ... **local,** state and federal **ordinances....**" (*Id.* (emphasis supplied)).

Also contained in the plan, at 2–15, is "Map 2.0—Site Suitability." This map depicts the County's application of the foregoing considerations to lands within its jurisdiction, and identifies areas suitable for solid waste disposal facilities. The plan described the process of identification as follows:

> Local impacts and future land use have been assessed in determining acceptable disposal facility areas. The areas which will greatly impact local city streets, increase truck traffic in densely populated areas such as the central business district,

---

**10.** The trial court in *Butts II* had held, on October 22, 1993, that the County was powerless to deny that the proposed site was inconsistent with its plan "unless it can be shown that the proposed site violates EPD Criteria for siting on some valued county land use or environmental regulations which preceded [Pine Ridge's] reliance on the issue of its Special Exception Permit. OCGA Code Section 12–8–31(b)." (Plaintiffs' exh. 57, attached to Transcript of Hearing on 1/27/94).

**11.** The Brief filed by the County with the Georgia Court of Appeals in *Butts II* repeatedly demonstrates that the issue of compliance with "land use" factors, considerations, and criteria was before that court. At one point, the County described as erroneous the trial court's conclusion that "local governments are limited to only 'valid' land use or environmental siting criteria as part of the site suitability step of review incorporated by O.C.G.A. § 12–8–31.1...." Appellants' Brief to Georgia Court of Appeals in *Butts II,* at 8. And when describing its own enumerations of error, the County said: "[T]hese arguments regarding ... other land use ... criteria ... were made to the trial court, and preserved for appeal...." *Id.* Finally, the County claimed that "[t]he trial court erred by concluding that [the County] had failed to show any valid land use ... regulation which would authorize [the County] to deny [Pine Ridge's] verification of compliance with the Plan." *Id.* at 10.

or be deemed as suitable for residential use in the future have been designated as unacceptable. Three locally and regionally significant recreation areas in Butts County are High Falls State Park, Indian Springs State Park, and the Dauset Trails Nature Preserve. Avoiding potential adverse impacts to these resources was an important element to the process in developing Map 2–0.

(Transcript of 1/27/94, exh. P–48, at 2–14).

However, the County's own characterization of the issues before the state court in *Butts II* supplies the most enlightening detail about the Litter Control and Cemetery ordinances. When Pine Ridge's motion for preliminary injunctive relief was before this court, *Butts II* was pending before the Georgia Court of Appeals. The County filed with this court their "Brief in Opposition to Plaintiffs' Petition for Preliminary Injunction." In that brief, the County stated, "The issue of whether Pine Ridge must comply with [the Litter Control and Cemetery] ordinances is currently before the Georgia Court of Appeals in *Butts II*." Brief, at 5, 41. Having lost on this issue in state court, the County now claims the issue of compliance with these ordinances is before this court.

## II. DISCUSSION

■ Contained within the court's order of September 15 was an opportunity for the County to "show cause" why the relief this court found Pine Ridge entitled to should not include an additional requirement—that the County be ordered to certify to EPD Pine Ridge's compliance with local land use ordinances. It is in this context that the court weighs the evidence and arguments before it.

The court finds that the County has failed to show cause. Specifically, it has failed to

prove two things: (1) that the "land use" issue addressed by the court in *Butts II* is, under the facts of this case, different from the "land use" issue now before the court, and (2) that the Litter Control and Cemetery ordinances are in fact "land use ordinances".

In certain situations the questions of whether an applicant's site is consistent with the "land use" factors under a host jurisdiction's plan (*Butts II*) and whether there has been compliance with the host jurisdiction's local "land use" ordinances (this case) can be different. However, in situations such as that now before the court, the two inquiries are for all intents and purposes identical. This conclusion is bolstered by the indiscriminate fashion in which the County has administered the "land use" factors referred to in its plan. The County has simply failed to articulate a legitimate distinction between "land use factors" considered by them in their plan and "land use ordinances" in general. Indeed, the "land limitation element" of the County's plan, which supposedly takes into account "land use limitation[s]" and local ordinances, validates this court's conclusion that in this case satisfaction of the "land use factors" under the plan constitutes satisfaction of local land use ordinances.[12]

Overall, the fact that has most influenced the court's finding that the County has failed to show cause is the County's representation to this court that "[t]he issue of whether Pine Ridge must comply with these ordinances is currently before the Georgia Court of Appeals in Butts II."[13]

## III. CONCLUSION

This court accordingly amends its order of September 15, 1994, to include a requirement that defendants certify to the EPD that

**12.** This is not to say that every case involving the dual issues of "plan consistency" and "local land use ordinance compliance" will have the same result. The determining factor is the host jurisdiction's plan. Had the County's plan specifically exempted from its coverage local land use ordinances, so that their satisfaction could be determined under a separate process, the result might be different. However, the plan here specifically requires consideration of "local ordinances" in determining site suitability under the plan.

**13.** Notwithstanding this representation, the court finds that the Litter Control and Cemetery ordinances are not "land use ordinances." It is the making of this statement, rather than its substance, which affects the court's judgment. The County is therefore free to enforce them outside the context of the EPD approval process. *See supra* note 10.

plaintiffs' proposed site is in compliance with local land use ordinances. The content of the letter should conform to the dictates of this court's order of November 10, 1994, dealing with plaintiffs' motion for contempt. The court issues this order as an amendment to its prior order so that the Eleventh Circuit may consider this order simultaneously with defendants' appeal of the September 15 order.

**SO ORDERED.**